# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ANDREW HASEMEIER,        )
       )
       Plaintiff,        )
       )
    vs.        )        **Case No. 4:04CV00293SNL**
       )
PARKWAY SCHOOL DISTRICT,        )
       )
       Defendant.        )

## MEMORANDUM AND ORDER

This matter is before the Court on three motions filed by Defendant Parkway School District ("Parkway" or the "District"). Parkway has filed a Motion for Summary Judgment (#26) and a Motion to Strike portions of Plaintiff's Response to Defendant's Motion for Summary Judgment (#32). Also, before the court is Parkway's Motion to Strike Plaintiff's Request for Punitive Damages (#38). Plaintiff Andrew Hasemeier ("Hasemeier") has filed a Response in Opposition to the Motion for Summary Judgment,[1] but has not responded in opposition to the Motion to Strike. Parkway has filed a Statement of Uncontroverted Material Facts with its Motion for Summary Judgment, and Hasemeier has not controverted any of the facts contained in Parkway's statement. This case is set for a jury trial on May 31, 2005.

Hasemeier filed this six-count action against Parkway. Count I alleges discrimination in violation of the Americans with Disabilities Act ("ADA") and the Missouri Human Rights Act ("MHRA"). Count II alleges that Parkway violated Hasemeier's rights under the Family and

---

[1]Actually, although Hasemeier has filed a Response in Opposition to the Motion for Summary Judgment, he has not responded in opposition to several of the District's count-specific arguments that it should be granted summary judgment on each of Hasemeier's counts contained in his Complaint. Rather, Hasemeier has only opposed the granting of summary judgment on some of his counts, and has not spoken at all with respect to the other counts, as is further discussed in this opinion.

Medical Leave Act ("FMLA"). Count III alleges that Parkway retaliated against Hasemeier for seeking worker's compensation benefits. Count IV alleges unfair work practices by Parkway,[2] and Count V alleges that Parkway engaged in defamation. Lastly, Count VI claims that Parkway violated Hasemeier's due process rights in connection with his termination.

## Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to FED.R.CIV.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a

---

[2]On November 30, 2004, after receiving no objection from Hasemeier, this Court granted Parkway's Motion to Dismiss Hasemeier's "Weingarten" and "Polygraph Act" claims contained within Count IV of Hasemeier's Complaint.

verdict for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d

202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265

(1986).

In passing on a motion for summary judgment, the court must review the facts in a light

most favorable to the party opposing the motion and give that party the benefit of any inferences

that logically can be drawn from those facts.  Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.

1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).  With

this standard in mind, the Court now examines the facts of this case.[3]

## Background

Hasemeier was hired by Parkway as a grounds worker in the Operations Division on or

about February 12, 2001, and he did not have a contract for employment with the District.  Early

in his employment with Parkway, Hasemeier developed a serious problem with excessive

absenteeism which resulted in several warnings.[4]  Hasemeier also received a warning for violating

---

[3]The facts of this case are taken from Parkway's Statement of Uncontroverted Material Facts to which Hasemeier has not controverted.

[4]Indeed, Hasemeier incurred nine unscheduled absences and eight tardies in the first six months after he was hired by the District.  On or about November 13, 2001, Hasemeier received a Written Warning for excessive absenteeism as a result of those unscheduled absences and tardies. Despite his recent warning regarding unauthorized absences, he incurred another unscheduled tardy on November 26, 2001.  On or about November 29, 2001, Hasemeier received a Second Written Warning for excessive absenteeism as a result of his additional tardy on November 26, 2001.  Hasemeier's attendance problems continued in December when he incurred yet another unscheduled tardy on December 18, 2001.  On or about January 2, 2002, Hasemeier received a Final Written Warning for excessive absenteeism as a result of his additional tardy on December 18, 2001.  Hasemeier admitted that he understood that his job was in jeopardy as a result of his excessive absenteeism, and that any further unauthorized absences or tardies could result in his termination.

According to the District's attendance standards for the District Operations and Support Departments, any absence from work that was not previously scheduled at least five days in

Parkway's safety guidelines when he attempted to move a picnic table with the deck of a lawnmower, with its blades engaged. Hasemeier admitted that he understood that his job was in jeopardy as a result of his excessive absenteeism, and that further unauthorized absences or tardies could result in his termination.

In the Fall of 2002, Director of Facilities Larry Thompson ("Thompson") interviewed Hasemeier for a Maintenance Generalist position. Thompson hired Hasemeier for the position because of Hasemeier's carpentry experience. On or about August 5, 2002, Hasemeier was reassigned to the position of Maintenance Generalist at Parkway where he was expected to serve as an in-house handyman for the high school. The Maintenance Generalist position is largely self-directed in nature because the person is expected to routinely inspect the building for needed repairs and take care of those repairs without prior requests from building staff or administrators.

Prior to reassigning Hasemeier to the Maintenance Generalist position, Thompson talked to Hasemeier about Hasemeier's previous attendance problems. Hasemeier assured Thompson of his commitment to being successful in the Maintenance Generalist position, and promised him that his previous problems with attendance would not continue. Despite Hasemeier's assurances to Thompson, his attendance problems persisted in the Maintenance Generalist position.

On or about October 16, 2002, Hasemeier was put on a three-day unpaid Decision-Making Suspension for excessive absenteeism as a result of incurring nine unscheduled absences

---

advance with the employee's supervisor by completing an Application for Absence Form is considered an "unscheduled absence." Any number of consecutive days of absence count as one "occurrence." An employee's accumulation of six unscheduled absences in any twelve-month period, excluding FMLA leave, worker's compensation leave, and other legally mandated leave, constitutes excessive absence, and the employee, depending on mitigating circumstances, may be subject to progressive discipline. An employee's accumulation of nine instances of tardiness or early departure in a twelve-month period also constitutes excessive absence. Three tardies equate to one occurrence of an unscheduled absence.

since his January 2, 2002 Final Written Warning.  Hasemeier served his suspension from October 21, 2002 through October 23, 2002.[5]  On or about October 24, 2002, upon returning from the unpaid suspension, Hasemeier signed a statement in which he once again renewed his commitment to regular attendance and adherence to District policies.

While Hasemeier was employed in the Maintenance Generalist position, Parkway Central administrators had concerns that he did not regularly take the initiative to identify maintenance tasks that needed to be addressed without being asked.  Don Rothermich ("Rothermich"), the Building Manager, frequently noticed that Hasemeier would not move quickly from one task to another because he got distracted by conversations with members of the school community.  Rothermich reminded Hasemeier on a weekly basis that Hasemeier should keep such social interactions to a minimum while on the job.

On or about November 25, 2002, Thompson conducted an evaluation of Plaintiff's performance in the Maintenance Generalist position (the "90 Day Evaluation") pursuant to District practice in which all employees are evaluated after 90 days in a new position.  In connection with the 90 Day Evaluation, Thompson solicited the input of the Principal Bill Myer and Rothermich.  The 90 Day Evaluation noted concerns about Hasemeier's performance and attendance.  Several areas were marked as needing improvement, including attendance, a need to proactively identify work, a need to spend less time conversing with staff and more time working, and a need to improve general maintenance generalist skills.

Thompson reviewed the content of the 90 Day Evaluation with Hasemeier in a meeting on or about December 2, 2002.  Hasemeier admitted the validity of the attendance problems noted in

_____

[5]Apparently, Hasemeier would have been suspended even earlier, but the District chose to exercise leniency by not penalizing him for unscheduled absences related to two deaths in his family and his wedding.

the 90 Day Evaluation.  As a result of the concerns raised in the 90 day Evaluation, Hasemeier's probationary status was extended an additional 90 days.

On or about December 3, 2002, Hasemeier sustained a shoulder injury while working on the job.  According to Hasemeier's injury report, the injury occurred when he "was carrying a 50 pound bag of tools and a 25 pound ladder, so [he] could not unlock the door to turn on the lights to see what [he] was doing."  As a result of his injury, Hasemeier was placed on light duty from December 3, 2002 through December 23, 2002.  On December 23, 2002, Unity Corporate Health released Hasemeier to regular duty.

On or about December 24, 2002, supervisor Frank McCarty ("McCarty") saw Hasemeier take an extended break from his duties in violation of the set break schedule required of District grounds and maintenance employees.  As a result of Hasemeier's deviation from the break schedule, Hasemeier received a Verbal Warning from McCarty on December 24, 2002.  McCarty advised Hasemeier that if he needed to deviate from the break schedule in the future, he should follow District guidelines by informing his immediate supervisor in advance to avoid disciplinary action.  However, Hasemeier incurred another violation, and thereafter he received a Written Warning on January 14, 2003 for taking an extended break and for wasting time on the job.

In conjunction with the Written Warning, Hasemeier was demoted to the position of custodian at Parkway West High School, which became effective January 15, 2003, and was formally approved by the Board of Education on or about January 22, 2003.[6]  Hasemeier was subject to demotion because he was on extended probationary status at the time of the January

---

[6]Hasemeier was demoted to a custodial position rather than a grounds position because no grounds positions were open or available.

14, 2003 Written Warning.[7]  On January 16, 2003, Hasemeier filed a grievance with his supervisor, Doug Stephens, challenging his Written Warning and demotion to custodian.

On January 24, 2003, Manager of Buildings and Grounds, Steve Ludwig, conducted a Level II grievance meeting with Hasemeier and union representative Clarence Howell to discuss his most recent discipline and demotion.  That same day, Hasemeier was voluntarily transferred to the position of outpost grounds worker at Parkway Central as that position had become available. On January 28, 2003, Hasemeier received a Final Written Warning for wasting time, making excessive personal calls, and disrupting school operations.  In connection with the Final Written Warning, Hasemeier was expressly advised that any further misconduct would result in an immediate suspension, with a recommendation to the Board for his termination.

At approximately 2:00 p.m. on January 31, 2003, Steve Ludwig observed Hasemeier and several other grounds workers taking an extended break prior to the end of their shift as they returned from their duties thirty minutes early and loitered in the facilities building.  Mr. Ludwig told the grounds workers, including Hasemeier, that they should clock out and leave if they were finished working for the day.  Hasemeier and several co-workers clocked out at that time. Hasemeier and the others were disciplined for wasting time and leaving their workstation without authorization prior to the end of the workday.

Several of the grounds workers, including Hasemeier, filed a grievance in connection with the January 31 incident.  As an outpost grounds worker, Hasemeier was responsible for keeping busy through the end of his shift, and therefore due to the nature of his position, the disciplinary action was maintained in his file.  On February 2, 2003, Hasemeier received a Suspension Pending

---

[7]Another employee, Ms. Rogers, who also took an extended break along with Hasemeier on January 13, 2003, also received a Final Written Warning for wasting time and for taking an extended break.  However, she was not demoted because she was not on probationary status.

Investigation for violation of Board of Education Policy GDQD.G: Administrative Guidelines for Policy Tenure and Discipline (for Classified Employees) in connection with the January 31, 2003 clocking out incident. On February 4, 2003, Hasemeier submitted a grievance in connection with his February 2, 2003 suspension. Thereafter, on February 6, 2003, John Siemers, Assistant to the Superintendent, Operations Division, conducted a grievance meeting with Hasemeier regarding his most recent suspension, as well as his pending grievance for his January 15, 2003 Written Warning and demotion to custodian.

Union representative Mitch Martin accompanied Hasemeier to that meeting, and assisted him with his presentation of his grievance. During that meeting Mr. Siemers listened to Hasemeier's concerns regarding his demotion and suspension. On February 10, 2003, Mr. Siemers issued his decision upholding all aggrieved disciplinary actions and recommending to the Board that Hasemeier's employment with the District be terminated. On February 11, 2003, Hasemeier contacted Human Resources manager Nancy Davis, claiming for the first time that he had been subjected to harassment based on his left hand deformity. On or about February 19, 2003, the Board of Education considered the recommendation that Hasemeier's employment be terminated. Hasemeier attended the Board meeting, but his union representative never appeared. Hasemeier never made an attempt to speak to the Board that evening. On February 19, 2003, the Board of Education approved Hasemeier's termination.

The District originally did not forward a COBRA notice to Hasemeier immediately after his termination because his termination was due to misconduct. However, counsel for the District subsequently sent a COBRA notice to Hasemeier's counsel on or about June 30, 2003. In that correspondence, counsel for the District advised Hasemeier's counsel that the District would be willing to reimburse Hasemeier for any medical expenses he had incurred from February 19, 2003

to June 30, 2003, provided that Hasemeier paid the premiums for March, April, May and June 2003.  In that correspondence, the District gave Hasemeier a deadline of September 1, 2003 to sign, date and return the COBRA notice to Parkway.  Hasemeier never returned the COBRA notice to the District.  Moreover, Hasemeier admits that he did not furnish the District with any medical expenses incurred.  Furthermore, Hasemeier did not provide the District with proof that he paid any premiums.

Plaintiff admits that he received and reviewed the District's employee handbook, which included the District's FMLA policy.  However, as Plaintiff further admits, he never requested FMLA leave during his employment with the District, nor did he seek guidance from the Human Resources Department as to the terms of that policy.

Hasemeier asserts that his discipline and discharge were the result of worker's compensation retaliation, disability discrimination, and his pursuit of grievances under District policy.  Hasemeier complains of having three conditions relevant to the claims in his Complaint: (1) a left hand deformity, (2) attention deficit disorder, and (3) a shoulder injury.

Hasemeier has had a left hand deformity since birth; however, he does not consider it to be a disability.  He told his co-workers that they should not consider his hand deformity to be a handicap, because he could do anything that they could do.  Hasemeier admitted that he did not believe that his supervisors, or Parkway employees with which he worked, regularly perceived him as having a disability due to his left hand deformity.

Hasemeier asserts that when he worked as a grounds worker for Parkway, he required assistance or additional time because of his hand deformity when running the hedge trimmer, greasing the mower, running the pole saw, stringing the weed eater, or running the large equipment.  He also required the use of a double-wheelbarrow, which was always available to

him.  During the period of time that Hasemeier held the position of Maintenance Generalist at Parkway, he asserts that he required assistance with wiring projects, installing filters in air conditioning units, putting up projector screens, and changing chalkboards.[8]  Hasemeier requested, and was provided with, accommodations for his left-hand deformity while working as a grounds crew member for Parkway, and Hasemeier was able to complete his duties as a grounds worker at the District despite his left-hand deformity.

During the period of time that Hasemeier held the position of custodian with Parkway, the only duty that he asserts that he was unable to perform due to his hand deformity was running the floor scrubber machine.  Hasemeier acknowledges that he was never required to use that piece of equipment.  Hasemeier acknowledges that there were no job duties that he either could not perform or required extra assistance in order to perform while he held the outpost position with Parkway.  Hasemeier asserts that his left hand deformity resulted in a need for assistance when diapering his infant daughter, and fastening the button on his right shirt cuff.

Hasemeier claims that he was subjected to derogatory comments pertaining to his hand while he was an employee of the District.  Specifically, he asserts that fellow employees, Tony Ruble, Jason Krah, and James Tinker referred to him as "Handy Andy," "Stubby," "Nubby," and "Lefty" while he worked on Tony Ruble's crew.[9]  After Hasemeier had complained to Steve Vossen about the comments, the District promptly transferred Hasemeier from Tony Rubble's crew to another crew under the direction of Tommy Wall and then the name-calling ceased.

---

[8]However, Hasemeier admits that he would have required assistance when changing chalkboards even if he did not have a hand deformity.

[9]Apparently, another individual who works for the District is Andre Gaiter, and he is often referred to as "Handy Andre" although he does not have a hand deformity.

Hasemeier asserts that he has been diagnosed with Attention Deficit Disorder ("ADD"). Hasemeier claims that his ADD "sometimes" constitutes a disability, but admits that he does not believe that anyone at the District perceived him to be disabled because of his ADD. Hasemeier acknowledges that the only way that his ADD affected his ability to work was that he needed to write down tasks and assignments to remember them, and the only accommodation that Hasemeier claims to have required due to his ADD was the repetition of directions and assignments. In fact, Rothermich provided Hasemeier with a day planner to help him keep track of pending and completed assignments while he was serving as the school's Maintenance Generalist. Hasemeier has admitted that the only limitation his ADD has placed on his daily living activities pertained to his visual memory. Hasemeier has also admitted that no one at the District made inappropriate comments to him about his ADD.

In conjunction with the shoulder injury that Hasemeier sustained, Hasemeier was placed on a temporary restriction of no overhead lifting and no lifting of weight over ten to fifteen pounds. For several weeks, the District accommodated Hasemeier's restrictions while he continued to hold the position of Maintenance Generalist. During that period, tasks that required heavy lifting were either completed by someone other than Hasemeier or placed on hold until his release to full duty. After several weeks passed, Parkway Central needed someone to fulfill those tasks. Thus, McCarty advised Hasemeier that if he was not released to full duty soon, Hasemeier would have to be temporarily reassigned to a custodial position until his shoulder injury healed. Thereafter, Hasemeier obtained a release from a physician allowing him to return to work full duty with no restrictions.

## Discussion

*I. Americans with Disabilities Act and the Missouri Human Rights Act*

In Count I, Hasemeier alleges discrimination on the basis of his alleged disabilities in violation of the ADA and the MHRA. The ADA bars employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is a person "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Similarly, the MHRA creates a cause of action against employers who discriminate against an otherwise qualified person on account of a disability. R.S.Mo. § 213.010 *et. seq.*

Claims of discrimination under the ADA are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Greer v. Emerson Electric Co., 185 F.3d 917, 921 (8th Cir. 1999); Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 908 (8th Cir. 1999); Buckles v. First Data Resources, 176 F.3d 1098, 1100 (8th Cir. 1999); Bailey v. Amsted Industries, Inc., 172 F.3d 1041, 1044 (8th Cir. 1999). The same analysis applies to a disability discrimination claim brought under the MHRA. Nesser v. Trans World Airlines, 160 F.3d 442, 445 (8th Cir. 1998); Mole v. Buckhorn Rubber Products, Inc., 165 F.3d 1212, 1216 (8th Cir. 1999).

Pursuant to McDonnell Douglas, the plaintiff must establish a *prima facie* case by demonstrating that (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his position with or without accommodation, and (3) he has suffered an adverse employment action because of his disability. Greer, 185 F.3d at 921; Buckles, 176 F.3d at 1100. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant employer to come forth with a legitimate, nondiscriminatory reason for the employment action. Nesser, 160 F.3d at 445. If the employer meets this burden, the plaintiff must then show that the

employer's stated reason is a pretext for discrimination, and the real reason for the employment action was discrimination based upon plaintiff's disability.  Id.

For purposes of resolving the instant motion only, the Court will assume that Hasemeier is a "disabled" individual within the meaning of the ADA.  Yet, even assuming that Hasemeier is a disabled individual within the meaning of the ADA, the Court agrees with the District that he is not a "qualified individual with a disability" because of his excessive absenteeism and numerous violations of District rules and policies.

The determination of whether an individual is qualified for purposes for the ADA is a two-step process, and should be considered as of the time of the adverse employment decision.  The first inquiry is to determine if the individual possesses the requisite skill, experience, education and other job-related requirements for the position held or desired.  Browning v. Liberty Mutual Ins. Co., 178 F.3d 1043, 1047 (8th Cir. 1999); 29 C.F.R. § 1630(m).  The second inquiry is to determine whether the individual can, despite his or her impairments, perform the essential functions of the job either with or without reasonable accommodation.  Browning, 178 F.3d 1047-8; 29 C.F.R. § 1630.2(m).

In this case, there is no argument on behalf of the District that Hasemeier lacks the requisite skill, experience or education to perform his job.  Therefore, the Court will assume that Hasemeier has satisfied the first part of the test that he is "qualified."  However, as to the second part of the test, Hasemeier has the burden to prove that, with or without reasonable accommodation, he can perform the essential functions of the job.  This Hasemeier simply cannot do.

The Eighth Circuit has  "consistently held that regular and reliable attendance is a necessary element of most jobs."  Pickens v. Soo Line Railroad Co., 264 F.3d 773, 777 (8th Cir.

2001), cert. denied, 535 U.S. 1057 (2002) citing Greer, 185 F.3d at 921 quoting Nesser, 160 F.3d at 445. Other circuits have also held that regular and reliable attendance is a necessary element of most jobs. See Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) ("Because [the plaintiff] could not attend work, he [was] not a 'qualified individual with a disability' under the ADA."); Carr v. Reno, 23 F.3d 525, 530 (D.C. Cir. 1994) (coming to work regularly was an "essential function"); Tyndall v. Nat'l Educ. Centers, 31 F.3d 209, 213 (4th Cir. 1994) ("[A] regular and reliable level of attendance is a necessary element of most jobs."). "An employee who is unable to come to work on a regular basis is unable to satisfy any of the functions of the job in question, much less the essential ones." Moore v. Payless Shoe Source, Inc., 187 F.3d 845, 848 (8th Cir. 1999) citing Halperin v. Abacus Tech. Corp., 128 F.3d 191, 198 (4th Cir. 1997).

It is undisputed that Hasemeier has exhibited multiple attendance and performance deficiencies throughout his tenure with the District. Hasemeier was disciplined several times for a variety of offenses, including excessive absenteeism and violations of District rules and policies. Hasemeier admits that he was absent on the long litany of days as outlined by the District in his various warnings and suspension. Hasemeier was not meeting the District's legitimate expectations by not being consistently present to perform his job duties and by not adhering to the Districts rules and polices prohibiting unscheduled breaks during the workday. Hasemeier has failed to show any genuine dispute of a material fact over his ability to show up regularly for work, and therefore has failed to meet his burden that he is a "qualified individual with a disability who can perform the essential functions of his job, with or without reasonable accommodation."[10]

---

[10]With no *prima facie* case made by Hasemeier, the burden does not shift to the District to come forth with a legitimate reason for Hasemeier's termination.

Judgment should be entered as a matter of law for the District on Hasemeier's ADA and the MHRA claims.

Hasemeier has possibly attempted to articulate a claim for hostile work environment under the ADA due to the names that his co-workers called him such as "Handy Andy" "Lefty" "Nubby" and "Stubby;" and the Court will analyze that claim now.[11] To be successful, a plaintiff must demonstrate: (1) his membership in a protected class, (2) incidents of unwelcomed harassment; (3) that the harassment was the result of his membership in the protected class; and (4) that the harassment was severe enough to affect the terms, conditions, or privileges of his employment. Shaver v. Independent Stave Co, 350 F.3d 716, 720 (8th Cir. 2003). In order to be actionable, the harassment must be both subjectively hostile and abusive to the victim, and severe and pervasive enough to create an objectively hostile or abusive work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993). However, anti-discrimination laws do not create a general civility code, and conduct that is merely rude, abrasive, unkind, or insensitive does not rise to the level of actionable harassment. Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 327 F.3d 771, 782 (8th cir. 2003); Shaver, 350 F.3d at 721.

In the instant case, the comments complained of by Hasemeier were not so severe or pervasive as to affect the terms, conditions, or privileges of his employment. They were not threatening, physically harassing, and they were not so upsetting as to cause Hasemeier serious emotional trauma. Furthermore, to the extent that such comments made Hasemeier uncomfortable, the District promptly transferred Hasemeier from Tony Rubble's crew to another crew under the direction of Tommy Wall after Hasemeier had complained to Steve Vossen about

---

[11]Hasemeier does not claim that anyone used derogatory language in reference to his ADD or shoulder injury.

the comments. After the transfer, the name-calling ceased. In short, while such comments may have been rude or unkind, they do not rise to the level of an actionable claim for hostile work environment under the ADA, and accordingly judgment should be entered for the District.

*II. Family and Medical Leave Act*

In Count II, Hasemeier claims that the District violated his rights under the FMLA. Hasemeier states that he "was terminated because of his exercising his right to request time away from work for recovery, and Defendant sought to terminate Plaintiff after having exercised his right to time away from work due to a serious shoulder condition, and in retaliation against Plaintiff for requesting time off of work." See Compl. at ¶¶ 41-43.

The FMLA prohibits employers from terminating employees who exercise their rights under the FMLA. 29 U.S.C. § 2601 *et seq.* Section 2612 of Title 29 of the United States Code provides that eligible employees are to be given leave from work under certain met conditions. "Although, an employee need not expressly assert rights under the FMLA or even mention the FMLA, []he does have an obligation to 'state that leave is needed.'" Beal v. Rubbermaid Commercial Products, 972 F.Supp. 1216, 1226 (S.D. Iowa 1997); 29 C.F.R. § 825.302(c).

Hasemeier never exercised any rights under the FMLA. Most significantly, he has admitted that he never requested FMLA leave while he was employed by the District even though the District's FMLA policy had been given to Hasemeier, and he had reviewed it. In addition, Hasemeier has also admitted that he never sought guidance from the District's Human Resources Department regarding the FMLA policy.

In fact, after his shoulder injury, Hasemeier presented the District with a physician's release which returned him to full duty work. Thereafter, of course, Hasemeier returned to work, yet Hasemeier now complains that he was terminated because of his exercising his right to request

time away from work for recovery, a request he never made. It would be unreasonable to expect the District to grant leave time to Hasemeier after Hasemeier presented the District with a doctor's release stating that he may return to full duty work. Therefore, Hasemeier cannot possibly state a claim that the District violated the FMLA. Thus, summary judgment should be granted in favor of the District on Count II.

*III. Retaliation for worker's compensation*

In Count III, Hasemeier claims that the District retaliated against him for seeking worker's compensation benefits when he filed a worker's compensation claim related to his December 2002 shoulder injury. In order to be successful, Plaintiff must establish that: (1) he was employed by the District prior to his injury; (2) he exercised a right granted by Missouri worker's compensation law; (3) he was discharged; and (4) an *exclusive causal relationship* between his action and the District's actions. <u>Crabtree v. Bugby</u>, 967 S.W.2d 66, 70-72 (Mo. 1998); R.S.Mo. § 287.780 (emphasis added).

In this case, Hasemeier has not and cannot establish an exclusive causal relationship between his action and the District's actions as Hasemeier has not disputed his excessive absenteeism and violations of District policies and rules to which the District contends were the basis for Hasemeier's termination. Hasemeier's shoulder injury occurred on December 3, 2002; thereafter, Hasemeier was reprimanded for taking extended breaks on December 24, 2002 and then again on January 31, 2003, which along with his previous litany of violations, resulted in his eventual termination on February 19, 2003. Given that Hasemeier's termination occurred after multiple written and verbal warnings, he cannot prove an exclusive causal relationship between his action in requesting worker's compensation and the District's actions in terminating him.

Therefore, summary judgment should be entered in favor of the District on Hasemeier's worker's compensation retaliation claim.

*IV. Unfair work practices*

In Count IV, Hasemeier alleges unfair work practices by the District. In this Count, Hasemeier raises several claims including that the District violated his Weingarten rights to union representation, that the District violated the Polygraph Act, and that the District failed to advise him of his right to purchase health insurance within the time and in the fashion required under COBRA. He argues that as a result of such failure to advise him of his COBRA rights, he has sustained economic injury and damages. On November 30, 2004, after receiving no objection from Hasemeier, this Court granted Parkway's Motion to Dismiss Hasemeier's "Weingarten" and "Polygraph Act" claims contained within Count IV of Hasemeier's Complaint. Therefore, only Hasemeier's COBRA claim in Count IV remains.

The District argues that it is entitled to summary judgment on Hasemeier's COBRA claim because there is no redressibility because Hasemeier has received the materials and compensatory damages are not available pursuant to COBRA. Further, the District contends that even if damages were available under COBRA, Hasemeier cannot prove that he has sustained any damages. Hasemeier has not responded in any way to the District's arguments that it is entitled to summary judgment on Hasemeier's COBRA claim. In fact, Hasemeier does not even reference or mention COBRA in his response.

Title XXII of the Public Service Act, 42 U.S.C. § 300bb-1 through § 300bb-8 governs public employers with respect to COBRA. Under 42 U.S.C. § 300bb-7, an individual aggrieved by the failure to comply with notice requirements may seek equitable relief against a state or local governmental employer. There is no provision for compensatory damages.

Hasemeier has not disputed the fact that he has not sustained any damages with respect to his COBRA claim. He refused to elect continued COBRA coverage when it was offered by the District. Even though the District was dilatory in forwarding the COBRA election documents to Hasemeier, he has not offered any material facts to dispute that he has not been damaged by the District's delay. As a result, the District is entitled to judgment as a matter of law regarding Hasemeier's COBRA claim.

*V. Defamation*

In Count V, Hasemeier asserts that Parkway defamed him because it accused him of "dereliction of his work responsibilities, improperly extending his breaks, vandalism, and harassing his co-workers." See Compl. at ¶ 54. The District argues that it is entitled to summary judgment on Hasemeier's defamation claim because Hasemeier cannot establish a *prima facie* case for defamation, and Hasemeier cannot obtain relief under the doctrine of sovereign immunity. Hasemeier has not responded to the District's argument that it is entitled to summary judgment on Hasemeier's defamation claim.

To state a claim for defamation, Hasemeier must establish: (1) publication; (2) of a defamatory statement; (3) that identifies the plaintiff; (4) that is false; (5) that is published with the requisite degree of fault; and (6) damages the plaintiff's reputation. Overcast v. Billings Mutual Insurance Co., 11 S.W.3d 62, 70 (Mo. 2000). Publication entails the communication of defamatory matter to a third person. Rice v. Hodapp, 919 S.W.2d 240, 243 (Mo. 1996).

In this case, Hasemeier has admitted that he has no evidence that those allegedly defamatory statements were made to anyone outside the District. Plaintiff's Dep. 318, 319. Furthermore, Hasemeier admits that no one ever actually accused him of vandalizing the boiler room at Parkway West. Plaintiff's Dep. 319. As Plaintiff cannot establish the first required

element of a *prima facie* case for defamation, publication, summary judgment is proper in favor of the District on Hasemeier's claim for defamation.

*VI. Due Process Rights*

Finally, in Count VI, Hasemeier alleges that Parkway violated his due process rights in connection with his termination. Hasemeier argues that the District has a grievance policy that "creates a right and a constitutionally protected liberty interest in [Hasemeier] having a representative of his chosing [sic] at Level III or higher. Notwithstanding Defendant's policy, Defendant denied Plaintiff the right to have a representative of his choosing before proceeding with Plaintiff's grievance which resulted in Plaintiff's termination." See Compl. at ¶¶ 60-61.

The District argues that as Plaintiff was an at-will employee of the District, he was not entitled to any due process protections in connection with the termination of his employment. The District also argues that Hasemeier's claim that he was deprived of due process because the specific union representative that he wanted to accompany him to his grievance hearings was unavailable (as he was busy participating in union bargaining at the time) does not state a claim for deprivation of due process. Hasemeier has not responded at all to the District's argument that it is entitled to summary judgment on Hasemeier's due process claim, has not cited any legal authority to show that he is entitled to more due process than he has received, and has not explained what constitutionally protected liberty interest was infringed.

The Due Process Clause of the 14th Amendment provides that, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest. If successful,

the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" Krentz v. Robertson Fire Protection District, 228 F.3d 897, 902 (8th Cir. 2000).

This Court assumes that Hasemeier is asserting a property interest, not a life or liberty interest, in his employment. "To determine whether an employee enjoys a protected property interest in continued employment, we look to state law." Eddings v. City of Hot Springs, Arkansas, 323 F.3d 596, 601 (8th Cir. 2003). In Missouri, employment is "at-will" unless the employment is for a definite period of time, and "at-will" employees may be discharged at any time and without the need for the district to show good cause for dismissal or provide due process protections. Amaan v. City of Eureka, 615 S.W.2d 414, 415-416 (Mo. 1981). Hasemeier's employment was not for a fixed term. Because Hasemeier was an employee "at-will," he enjoyed no protected interest in continued employment, and therefore summary judgment is appropriate as to his due process claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Parkway School District's Motion for Summary Judgment (#26) be and hereby is **GRANTED**. Judgment is entered for Defendant Parkway School District on the merits of Plaintiff Andrew Hasemeier's Complaint.

**IT IS FURTHER ORDERED** that Defendant Parkway School District's Motion to Strike portions of Plaintiff's Response to Defendant's Motion for Summary Judgment (#32) be and hereby is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Parkway School District's Motion to Strike Plaintiff's Request for Punitive Damages (# 38) be and hereby is **DENIED** as moot.

**IT IS FINALLY ORDERED** that this cause of action is **DISMISSED** from the Court's trial docket of May 31, 2005.

Dated this <u>13th</u> day of May, 2005.

_____

SENIOR UNITED STATES DISTRICT JUDGE